# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

Intellectual Ventures I LLC and
Intellectual Ventures II LLC,

      Plaintiff,

v.

Hewlett Packard Enterprise Company,

      Defendant.

Civil Action No. 6:21-cv-00226-ADA

## PLAINTIFFS' SUR-REPLY CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.   Introduction ........................................................................................................... 1

II.  Disputed Terms ................................................................................................... 1

   A. U.S. Patent No. 6,618,736 ............................................................................. 1

      1. "intercepting an attempt to [write/read] a data item [to/from] a [storage unit
      of the first set/a shared storage unit]" (claims 1, 6, 7, 17, 25, 26, 53) ............................ 1

      2. "program code for intercepting an attempt to write a data item to a storage unit
      of the first set" (claim 53) ........................................................................ 5

      3. "program code for storing an indication in the first usage map that the
      corresponding storage unit of the second set contains valid data" (claim 53) ................. 7

   B. U.S. Patent No. 6,816,464 ............................................................................. 8

      1. "route" (claim 1) ................................................................................ 8

      2. "route statistics" (claim 1) ................................................................... 9

   C. U.S. Patent No. 7,783,788 ............................................................................. 10

      1. "I/O peripheral subsystem configurations" (claim 1) ............................................ 10

   D. U.S. Patent No. 8,023,991 ............................................................................. 12

      1. "a computer program product recorded on a computer-readable medium,
      comprising logic for detecting that a first access point is using a radio frequency
      channel . . . logic . . . for instructing the first access point to adjust transmit power"
      (claim 1) ........................................................................................ 12

      2. "wherein the first access point adjusts transmit power as instructed" (claim 1) ..... 14

   E. U.S. Patent No. 8,725,132 ............................................................................. 15

      1. "in order to reduce interference" (claim 1) ................................................... 15

   F. U.S. Reissue Patent No. 42,153 ...................................................................... 16

      1. "sending the poll response communications to the client systems" (claim 1) ......... 16

   G. U.S. Reissue Patent No. 44,818 ...................................................................... 18

      1. "hierarchical token bucket resource allocation" (claims 1, 2, 17, 18, 30, 32, 34) ... 18

   H. Conclusion ........................................................................................... 19

# TABLE OF AUTHORITES

**Cases**

*Dealtrack, Inc. v. Huber*,
 674 F.3d 1315 (Fed. Cir. 2012) ............................................................. 6

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
 755 F.3d 1367 (Fed. Cir. 2014) ............................................................. 4

*Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*,
 No. 2:16-CV-0055-JRG-RSP, 2017 WL 2190103 (E.D. Tex. May, 17 2017) ........................ 14

*MasterMine Software, Inc. v. Microsoft Corp.*,
 874 F.3d 1307 (Fed. Cir. 2017) ............................................................. 14

*Northrop Grumman Corp. v. Intel Corp.*,
 25 F.3d 1346 (Fed. Cir. 2003) ............................................................. 4

*Pacing Techs LLC v. Garmin Intern. Inc.*,
 778 F.3d 1021 (Fed. Cir. 2015) ............................................................. 3

*Poly-America, L.P.*, v. *GSE Lining Tech., Inc.*,
 383 F.3d 1303 (Fed. Cir. 2004) ............................................................. 2

*Regents of University of Minn. v. AGA Med Corp.*,
 717 F.3d 929 (Fed. Cir. 2013) ............................................................. 3

*Summit 6, LLC v. Samsung Elecs. Co.*,
 802 F.3d 1283 (Fed. Cir. 2015) ............................................................. 3

*Thorner v. Sony Computer Entm't Am. LLC*,
 669 F.3d 1362 (Fed. Cir. 2012) ............................................................. 1, 16, 19

*VocalTag Ltd. v. Agis Automatisering B.V.*,
 2016 WL 4547367 (Fed. Cir. 2016) ............................................................. 6

# I.    INTRODUCTION

Without citation to authority, HPE begins its Reply Brief by taking the remarkable position that it would be "legal error" to construe claim terms with their plain and ordinary meanings.  Federal Circuit precedent stands for the opposite and sets forth the only two circumstances when a Court should deviate from a term's plain and ordinary meaning.  *See, e.g., Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (only two exceptions to general rule that claims are given their plan and ordinary meaning are when a patentee: (1) acts as lexicographer; and (2) disavows claim scope).

HPE's proposed constructions seek to sidestep this standard by claiming it is proposing plain and ordinary meaning constructions but HPE then grafts limitations onto its constructions to "elaborate" on their meaning.   HPE tries to justify this improper method of limiting claim scope by conflating it with this Court's practice of clarifying aspects of a term's plain and ordinary meaning to memorialize its resolution of claim construction disputes, which prevents a party from getting two bites of the claim construction apple.  But HPE's constructions run contrary to the plain language of the claims, read limitations into them from preferred embodiments, read out other preferred embodiments, and require misreading the prosecution histories.  HPE's proposed limitations, therefore, cannot meet the standard for limiting the plain and ordinary meaning of the disputed terms.

# II.    DISPUTED TERMS

## A.    U.S. Patent No. 6,618,736

### 1.   *"intercepting an attempt to [write/read] a data item [to/from] a [storage unit of the first set/a shared storage unit]" (claims 1, 6, 7, 17, 25, 26, 53)*

| HPE's Proposed Construction | IV's Proposed Construction |
|---|---|
| Plain and ordinary meaning, *i.e.*, receiving an attempted system call, directed elsewhere, to | Plain and ordinary meaning |

| HPE's Proposed Construction | IV's Proposed Construction |
|---|---|
| [write/read] a data item [to/from] a storage unit | |

HPE's Reply Brief introduces a new position for this term by arguing that the claimed read/write attempts are not just system calls, but rather are *file* system calls, an even narrower subset of system calls. Reply Brf., Dkt. 40 at 2 ("HPE's construction [] clarifies that the intercepted read and write attempts are system calls (*i.e.*, calls directed to the file system" (emphasis added)). In doing so, HPE asks the Court to construe "an attempt to write/read a data item" with its plain and ordinary meaning, but that the plain and ordinary meaning is limited to an attempted system call, which, in turn, is further limited to an attempted file system call. To reach this result, HPE argues that the preambles of the asserted claims are limiting and that the patent's use of the term "file system" throughout the specification confirms that the disputed term should be limited to a file system call. *Id.* None of HPE's points, however, support limiting the disputed term in the way it proposes and instead run contrary to the intrinsic record.

To begin, the preambles of claims 1 and 17 are not limiting. As this Court is aware, for a preamble term to be limiting it must be "necessary to give life, meaning and vitality" or provide "essential structure" to the claim. *See Poly-America, L.P.*, v. *GSE Lining Tech., Inc.*, 383 F.3d 1303, 1309 (Fed. Cir. 2004). Here, the preambles merely provide a general context for the claimed limitations, *e.g.*, "a method for file system creation and archival." HPE is correct that the words "file" and "system" are included in the preamble; however, that is insufficient to import the narrow limitation that it proposes into the claims.[1] *See Summit 6, LLC v. Samsung*

---

[1] With respect to the preamble of claim 53, the parties have agreed that the claim is subject to § 112 ¶ 6 but dispute the corresponding structure for the "program code for intercepting" element. Because claim 53 is a means-plus-function claim and the scope of the "intercepting" term will be determined by the Court in the context of § 112 ¶ 6, whether the preamble of claim 53 is limiting is not relevant to this disputed term.

*Elecs. Co.*, 802 F.3d 1283, 1292 (Fed. Cir. 2015) ("[p]reamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim").

Neither does HPE's belated "present invention" argument change the fact that the preamble here is not limiting. As noted in IV's Responsive Brief with respect to the "poll response communication" term of the '153 patent, just because a patentee uses the phrase "the present invention" followed by a description of related technology (here, file systems) does not mean there is reason to limit a disputed term's scope in the absence of a clear and unmistakable disclaimer. Dkt. 37 at 29-30 (discussing the holdings of *Pacing Techs LLC v. Garmin Intern. Inc.*[2] and *Regents of University of Minn. v. AGA Med Corp.*[3]). IV does not dispute that the field of the invention relates to file system creation and archival. Nevertheless, as discussed above, no legal basis exists to read HPE's proposed limitations into the claims themselves. To the contrary, based on the specification and words of the claims, one of skill in the art would understand that the interception of an attempt to write/read a data item means exactly what it says—an attempt to write/read data is intercepted—as well as appreciate that the general field of art relates to file systems. In fact, rather than limiting the claims as HPE argues, the disclosure of file system <u>creation</u> in the preambles and throughout the specification directly refutes HPE's proposed construction. In this context, one of skill in the art would understand that the claimed methods might be used to <u>create</u> a file system, something entirely inconsistent with HPE's proposal, which presupposes that a file system already exists.

---

[2] 778 F.3d 1021 (Fed. Cir. 2015).
[3] 717 F.3d 929 (Fed. Cir. 2013).

HPE next miscasts one of IV's prior arguments by making it seem as if IV's own evidentiary citations prove HPE's construction is correct because they include the words "system call." Reply Brf., Dkt. 40 at 2-3. But HPE misses the point. The specification *explicitly* contemplates that virtualization/interception can take place not only at the system call level, but also "at other levels" as well. *See* '736 patent at 12:15-22. For example, the specification describes an embodiment that *does not intercept system calls at all*; instead, it intercepts "requests for particular blocks on [a] virtual block device," which the specification describes as an *alternative* to the "interception of system calls." *See id.* Thus, as IV discussed in its Responsive Brief, the '736 specification does indeed describe preferred embodiments in which intercepting a write/read attempt does *not* involve intercepting a "system call," let alone a "file system call." *Id.*

Moreover, one of skill in the art would understand that there are many ways (particularly in a virtualized environment like that described in the patent) to intercept write/read attempts. *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371-72 (Fed. Cir. 2014) (noting embodiments in specification, even if only one embodiment, cannot limit scope of claims absent patentee's words or expressions of manifest exclusion or restriction). Each one of the citations used by IV that HPE points to as allegedly supporting its proposal instead is preceded by a note that the description is simply one embodiment or one implementation, which is clearly why IV cited to them. *Id.* Such use of preferred embodiments as exemplary descriptions does not limit claim scope. *See, e.g.*, *Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1354-56 (Fed. Cir. 2003). Accordingly, the disputed term should not be limited to the interception of system calls or file system calls as HPE urges.

*2. "program code for intercepting an attempt to write a data item to a storage unit of the first set" (claim 53)*

| HPE's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to § 112 ¶ 6.<br><br>Function:<br>Intercepting an attempt to write a data item to a storage unit of the first set<br><br>Structure:<br>System call wrapper 111 as shown in Figure 4 and description at 5:17-27, 9:4-7. | Subject to § 112 ¶ 6.<br><br>Function:<br>Intercepting an attempt to write a data item to a storage unit of the first set<br><br>Structure:<br>System call wrapper 111, system call vector table 113, Figure 1, Figure 4, 5:17-27, 5:28-39, 5:40-49, 5:50-57, 5:58-67, 9:4-7. |

HPE's argument to exclude Figure 1 and system call vector table 113 from the structure for this disputed term is confounding, particularly with respect to Figure 1 because it depicts the agreed-to structure (system call wrapper 111). In fact, HPE repeatedly cites to Figure 1 as support for its interpretation that the previously discussed "intercepting" term should be limited to intercepting file system calls. *See* Opening Brf., Dkt. 31 at 4-5 ("the specification discloses . . . 'a system call wrapper' that intercepts the attempt. *Figure 1 (annotated below) depicts a system that includes . . . a system call wrapper 111 'used to intercept system calls 115'*" (emphasis added)). HPE's dueling positions cannot be reconciled. Not surprisingly, in its Reply Brief, HPE largely ignores that contradiction, focusing instead on trying to make it seem like IV's position is that Figure 1 should be included because it illustrates system call vector table 113. Dkt. 40 at 4. That is not the case. Figure 1 should be considered corresponding structure for this disputed term regardless of whether system call vector table 113 is included because: (1) both parties agree that system call wrapper 111 is corresponding structure for the disputed term, and (2) Figure 1 shows system call wrapper 111 and is the main visual means by which system call wrapper 111 is described in the specification.

As for the inclusion of system call vector table 113, HPE simply misapplies the law on corresponding structure. For example, although HPE initially cites the *Micro Chemical, Inc.*[4] holding accurately—that corresponding structure is the structure necessary for performing the claimed function—HPE goes on to apply a narrower and legally incorrect standard. Reply Brf., Dkt. 40 at 3-4. That is, only the structure "minimally necessary" to perform the claimed function can be considered corresponding. *Id.* That is not the law. As the *Micro Chemical* case and many others have held corresponding structure includes all embodiments disclosed as performing the claimed function, period. *See, e.g.*, *Micro Chemical*, 194 F.3d at 1258-59; *VocalTag Ltd. v. Agis Automatisering B.V.*, 2016 WL 4547367, at *3 (Fed. Cir. 2016); *Dealtrack, Inc. v. Huber*, 674 F.3d 1315, 1329-30 (Fed. Cir. 2012).

HPE's other points are equally flawed. As noted in IV's Responsive Brief, system call vector table 113 is necessary to perform the claimed intercepting function because it is the vehicle by which system call wrapper 111 knows which system calls to intercept. Dkt. 37 at 8-9. It is not a single embodiment as HPE implies; rather, it is disclosed throughout the specification and even noted by the patentee as being "used throughout this description." '736 patent at 5:28-38, 5:43-48, 5:64-67. In any event, even if there was only one embodiment that disclosed system call vector table 113 as performing all or part of the claimed function it would still be considered corresponding structure. *See Micro Chemical*, 194 F.3d at 1258-59; *VocalTag*, 2016 WL 4547367 at *3; *Dealtrack*, 674 F.3d at 1329-30.[5]

---

[4] 194 F.3d 1250, 1258 (Fed. Cir. 1999).
[5] While IV believes it unnecessary, if the Court agrees with HPE that other structure disclosed in Fig. 1 corresponds to the claimed function (Reply Brf., at 4), IV would not object to its inclusion.

*3. "program code for storing an indication in the first usage map that the corresponding storage unit of the second set contains valid data" (claim 53)*

| HPE's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to § 112 ¶ 6.<br><br>Function:<br>Storing an indication in the first usage map that the corresponding storage unit of the second set contains valid data<br><br>Structure:<br>Usage map updating module 404 as shown in Figure 4 and description at 9:18-29. | Subject to § 112 ¶ 6.<br><br>Function:<br>Storing an indication in the first usage map that the corresponding storage unit of the second set contains valid data<br><br>Structure:<br>Usage map updating module 404, usage map 306, Figure 4, 9:18-29, 8:35-45. |

HPE's endeavor to exclude usage map 306 as structure for the disputed term is misguided. Claim 53, and indeed every asserted independent claim, includes a single usage map and that usage map is disclosed as usage map 306. The purpose of usage map 306 is to store indications of whether a particular storage unit contains valid data. *See, e.g.*, '736 patent at 8:28-31, 9:18-21, 9:35-41, 10:18-21. The function at issue here is storing an indication that the second storage unit contains valid data. It is not confusing or ambiguous that part of the structure for performing said function is the usage map itself, particularly given that the specification is replete with disclosures indicating as much, even to a layman. *Id.*

For example, in one embodiment described at 8:35-47, the usage map is disclosed as a bitmap that indicates the presence of valid data or the lack thereof with either a one or zero. A bitmap is a well-known structure for a specific type of memory organization often used to facilitate efficient data lookups. To implement the claimed "storing" function, it is necessary to understand that a bitmap can be used in order to properly correlate the series of ones and zeros to the presence of valid data. *Id.* Far from being superfluous, as HPE contends, in at least one embodiment, usage map 306 plays an important role in performing the claimed function. In fact, this point is further bolstered by looking to dependent claims 8-13, 16, 27-32, 35, 43-49, and 52,

which although not asserted, claim <u>a second usage map</u> for indicating which storage units of a

third set contain valid data. That these claims expressly recite a second usage map for a third

storage unit illustrates that there is only <u>one usage map</u> for the two units claimed in the asserted

claims. Therefore, it is readily apparent that usage map 306 is corresponding structure for the

claimed function, and HPE's argument that including it would create confusion and ambiguity as

to "whether claim 53 requires 'a first usage map' and a separate 'usage map 306'" is unfounded.

### B. U.S. Patent No. 6,816,464

#### 1. *"route" (claim 1)*

| HPE's Proposed Construction | IV's Proposed Construction |
|---|---|
| Plain and ordinary meaning, *i.e.*, path in the network from the origin of a packet or packets to their destination | Plain and ordinary meaning |

HPE's proposed construction would limit the term "route" to end-to-end network paths,

but this is inconsistent with the '464 patent's specification, which states:

> The route is the path in the network from the origin of a packet or packets to their destination. A route can be a direct end-to-end connection path, ***or it can consist of a path linked by any number of routers, switches, gateways, gatekeepers, etc.***

'464 patent at 1:30-32 (emphasis added). HPE's proposed construction is based on the first half

of the sentence quoted above but ignores the second half, which explicitly states that the term

"route" encompasses not only "end-to-end" paths, but also network paths between "gateways."

HPE now attempts to explain this inconsistency by arguing that the claims are limited to

systems in which <u>*every*</u> packet originates at a gateway and <u>*every*</u> packet's ultimate destination is

a gateway. *See* Reply Brf., Dkt. 40 at 6. Based on this false premise, HPE argues that its

proposed construction is not overly narrow because "end-to-end" paths and "gateway-to-

gateway" paths are the same thing. *See id*.

HPE's new argument that there are "no packets" other than those sent from gateway to gateway finds no support in the specification or claims of the '464 patent, and is based entirely on attorney argument and deceptively annotated figures. *See, e.g.*, Reply Br., Dkt. 40 at 6. In fact, HPE's position is inconsistent with numerous passages in the specification that refer to situations where the origin/destination of a packet is *not* a gateway. *See, e.g.*, '464 patent at 7:22-24 (referring to an embodiment in which "a *separate routing server* (not shown) can provide information about available gateways"); *see also id*. at 4:62-65 (explaining embodiments of invention may be implemented using "any computer network" or "*combination* of networks"). These passages explicitly contemplate embodiments in which packets are sent to/from devices (*e.g.*, a "separate routing server") that are not gateways, directly contradicting HPE's argument that *only* gateways can send/receive packets.

Thus, while HPE argues that its proposed construction "reflects the plain and ordinary meaning" of the term "route," it is in fact an attempt to limit the claims to networks in which *every* packet must be sent from one gateway to another. As explained above, HPE's position is wholly unsupported—indeed it is explicitly *refuted*—by the claims and the specification of the '464 patent. The court should construe "route" according to its plain and ordinary meaning, and should explicitly reject HPE's backdoor attempt to narrow the claims.

2.    *"route statistics" (claim 1)*

| HPE's Proposed Construction | IV's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Statistics related to the quality of a network path (route) |

As IV and HPE explained in previous briefs, the term "route statistics" is only in dispute because the parties disagree about the proper construction of the term "route." IV's proposed construction is based on the preliminary construction of "route statistics" that was adopted by

this Court last year, in a prior litigation involving the '464 patent. See Resp. Br., Dkt. 37, Ex. F at IV-HPE-00003804 (construing "route statistics" to mean "[s]tatistics related [to] the quality of a network path (route)"). In adopting this construction, the Court rejected the same limitations that HPE now seeks to import into the term "route," and by implication this term as well. Accordingly, IV respectfully requests that the Court maintain its prior construction of the disputed term.

### C.     U.S. Patent No. 7,783,788

#### 1.      *"I/O peripheral subsystem configurations" (claim 1)*

| HPE's Proposed Construction | IV's Proposed Construction |
|---|---|
| Plain and ordinary meaning, *i.e.*, data indicating the components of the I/O peripheral subsystem | Plain and ordinary meaning. |

HPE's argument with respect to this disputed term once again manipulates the facts and mischaracterizes IV's position. IV <u>did not</u> claim that HPE's proposed construction was under-inclusive as HPE states in its Reply Brief. *See* Dkt. 40 at 8. IV said that HPE's proposal is simply wrong. *See id.* at 15 ("[t]he patent's specification makes clear this position is simply incorrect"). As support for its proposal, IV pointed to an embodiment that HPE's construction would entirely read out of the claim scope. *Id.* That example embodiment is shown in figures 6*c* and 6*d*, illustrating the same components arranged in two different configurations. '788 patent at 3:43-46 ("the application server(s) and the virtual I/O server(s) can be deployed in a variety of configurations as illustrated in FIG. 6*a* thru 6*d*"). Importantly, there is no mention of a list of components, only the disclosure of a configuration as a particular arrangement thereof. *Id.* This fact alone confirms that HPE's construction is not supported by the record.

Apparently realizing this, in an effort to save its proposal, HPE now agrees with IV that the figures *do indeed show different arrangements* of the same components. Reply Brf., Dkt. 40

at 8.  Nevertheless, HPE inexplicably claims that its construction "is broad enough to encompass the identification of components and the way in which those components are arranged" and "is therefore correct."  *Id.*  But that position is belied by the narrowing language of HPE's proposal, which specifically defines the plain and ordinary meaning as "data indicating components."  Thus, contrary to HPE's unsupported attorney argument, its proposal is not broad enough to cover both the identification of components and their arrangement.

Even if HPE was correct as to the breadth of its proposal, however, its proposed construction would still not represent the plain meaning of the disputed term because the system's specific components are irrelevant to the claimed configuration.  For instance, the only reason that Figures 6*c* and 6*d* can be said to show any particular component is because the figures are computer-generated pictures designed to be visual companions to the prose of the specification.  As such, graphically illustrating the configuration of a system requires graphically illustrating system components.  But that does not make a list of components part of the disclosed configuration.  To the contrary, the specification makes clear that the disputed term refers to the arrangement or ordering of system components and is agnostic to the kind or type of components themselves.  *See, e.g.*, '788 patent at 3:42-46.

Indeed, this makes perfect sense and is exactly what one of skill in the art would understand the term to mean as well.  One well-known illustrative example is memory or storage arrays configured serially versus configured in parallel.  The fact that the former is arranged in a daisy-chain and the latter in parallel *is* the configuration.  The identity of the individual memory or storage units is of no consequence.  This is the principal illustrated by Figures 6*c* and 6*d* and the corresponding specification description.  Accordingly, HPE's proposal does not reflect the plain and ordinary meaning of the disputed term and IV respectfully requests the Court expressly

reject HPE's position and adopt IV's proposal instead because the disputed term's meaning is well-known in the art and requires no further construction other than the words themselves.

### D.    U.S. Patent No. 8,023,991

*1.    "a computer program product recorded on a computer-readable medium, comprising logic for detecting that a first access point is using a radio frequency channel . . . logic . . . for instructing the first access point to adjust transmit power" (claim 1)*

| HPE's Proposed Construction | IV's Proposed Construction |
|---|---|
| Plain and ordinary meaning, which does <u>not</u> include logic executed at said first access point | Plain and ordinary meaning. |

The "computer program product" term should be given its plain and ordinary meaning. This is not a difficult issue, nor a complex claim term needing construction. Even a basic, layman's understanding of computers illustrates the falsity of HPE's position. An access point ("AP") is just a special purpose computer, equipped with software and hardware, including a transceiver for sending and receiving signals. That claim 1 covers a computer device—here, an AP—whose software includes "logic" for detecting something about the device (*e.g.*, that it is using a particular channel) and for instructing the device's hardware to take some action (*e.g.*, adjust transmit power) is hardly remarkable; that is a fundamental function.

Yet HPE takes the position that not only does claim 1 not cover such a computer, but that the very idea of such a product is "nonsensical." *See* HPE Reply Brf., Dkt. 40 at 10. Unfortunately for HPE, the specification, the file history, and common sense disagree. Whether or not preceded by the actual word "preferred," the '991 patent specification is replete with embodiments where invention-enabled APs include software that can detect things about the AP and can instruct other parts of the AP, such as hardware components like transceivers, to take some action or make some adjustment. *See, e.g.*, '991 patent at 5:38-49, 6:16-19, 8:11-19, 8:48-

51.  As discussed in detail in IV's Responsive Brief (*see* Dkt. 37 at 16-20), HPE's proposed construction would exclude from the claim <u>*all*</u> *of these disclosed embodiments*, even including one in which the specification explicitly states that the software architecture for the AP optimization functionality of the invention "*is advantageously <u>implemented in APs</u>.*" '991 patent at 6:16-19 (emphasis added).  To contend, as HPE does, that claim 1—the *only claim in the '991 patent*—does not cover such an embodiment is flatly incorrect.  Moreover, HPE's argument that "detecting" the use of a channel is somehow different than "noting" the use of a channel is a distinction without a difference.  "Detect" and "note" are recognized synonyms.  *See* Ex. A (Oxford Thesaurus of English, listing "note" as a synonym of "detect").

HPE is wrong that claim 1 excludes any embodiment where the claimed "logic" is "for" or "on" or otherwise run by an access point.  As discussed in IV's Responsive Brief, claim 1 is broad enough to cover an embodiment where the claimed "logic" is run on the first AP as well as an embodiment where the "logic" is run by some external device.  *See* Dkt. 37 at 16-20.  Nothing in the claim, specification, or prosecution history—including the deletion of the words "for a first access point" from the *preamble* of claim 1, on which HPE places so much emphasis—changes that.  Beyond this inapposite amendment, HPE has failed to cite to a single statement from the applicant either providing a specific definition for the term in question or making any substantive argument clearly and unmistakably disavowing claim scope.  HPE has not established either of the two exceptions to the general rule that a claim be given its plain and ordinary meaning, and thus HPE's proposed construction fails as a matter of law.  *See* IV's Resp. Brf., Dkt. 37 at 17-18.  HPE's position should be rejected and the claim term should be given its plain and ordinary meaning.

| HPE's Proposed Construction | IV's Proposed Construction |
|---|---|
| Indefinite (mixed method and apparatus claim) | Plain and ordinary meaning. |

Claim 1 of the '991 patent is valid and sufficiently definite, reciting an apparatus with functional descriptions about capabilities of that apparatus and a "wherein" clause describing a capability of the environment in which the claimed "computer program product" operates. This is exactly the kind of valid apparatus claim reciting functional capabilities that courts have held is not an improper mixed method and apparatus claim. *See, e.g.*, *Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-CV-0055-JRG-RSP, 2017 WL 2190103 at *17-19 (E.D. Tex. May, 17 2017). While falsely accusing IV of "misdirection" for referencing the decisive role that claimed *user* action plays in decisions like *IPXL*, it was actually *HPE itself* that raised the user-action issue in its opening brief, placing particular emphasis on that concept throughout its argument. *See* Dkt. 31 at 18, 20 (underlining "the user uses the input means" and "callers digitally enter data"). Regardless, IV's point is simply that, consistent with Federal Circuit precedent, *In re Katz* and *IPXL* can be distinguished because the claims at issue in those cases explicitly called for performance of some action *by a user*, whereas claim 1 of the '991 patent does not. *See MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1313-16 (Fed. Cir. 2017); IV Resp. Brf., Dkt. 37 at 20-22.

HPE fails to distinguish the *Huawei* decision. Because there is no substantive distinction to draw, HPE resorts to semantics, seemingly suggesting that the distinction is that the claimed action in *Huawei* is written in passive voice ("is used by") whereas the action in the '991 patent is written in active voice ("adjusts"). *See* HPE Reply Brf., Dkt. 40 at 11-12. This is a distinction without a difference, *Huawei* was not a grammar-based decision, and both the claim at issue in

*Huawei* and claim 1 here are valid. The "wherein" clause held sufficiently definite in *Huawei* states "wherein the data forwarding tunnel identifier of the UPE is used by the LTE access network to forward data to the UPE." 2017 WL 2190103 at *18. Thus, despite explicitly reciting *use* and *forwarding data*—both actions—by a specific entity, the claim was held not indefinite as defining the network environment in which the claimed apparatus is configured to operate. *See id.* Similarly, the "wherein" clause of claim 1 of the '991 patent states "wherein the first access point adjusts transmit power as instructed," simply describing a capability of the network APs with which the claimed "logic" interacts. *See* '991 patent at 46-64.

Finally, as explained in IV's Responsive Brief, unlike the disputed clause in *Rembrandt*, which was not preceded by "wherein" and recited an explicit method step disconnected from the apparatus elements in the rest of the claim, claim 1 of the '991 patent *does* start with the critical word "wherein" and merely describes functional capabilities of the APs with which the claimed computer program logic interacts, and is thus not indefinite. *See* Dkt. 37 at 22.

### E.    U.S. Patent No. 8,725,132

#### 1.    *"in order to reduce interference" (claim 1)*

| HPE's Proposed Construction | IV's Proposed Construction |
|---|---|
| Plain and ordinary meaning, *i.e.*, for the purpose of reducing interference | Plain and ordinary meaning. |

The term "in order to reduce interference" means exactly what it says and should be given its plain and ordinary meaning. *See* IV Resp. Brf., Dkt. 37 at 23-25. HPE's one-paragraph response to IV's position on this term constitutes an attempt to <u>*redraft*</u> a perfectly clear claim as HPE sees fit, substituting HPE's preferred language for the actual words the inventor used and the U.S. Patent Office approved. Furthermore, after two full briefs, HPE has failed to establish either the lexicography or disclaimer exceptions to the general rule that a term be given its plain

and ordinary meaning, and thus HPE's proposed construction fails as a matter of law.  *See*

*Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2015).

HPE still refuses to explain the difference between "in order to" and "for the purpose of,"

and thus HPE's construction fails as a practical matter as well.  HPE should not be permitted to

hide the ball.  If the two phrases mean the same thing, there is no reason to construe the term in

the first place.  If "for the purpose of" is narrower than "in order to," then HPE is improperly

inserting extraneous limitations into the claim.  In either scenario, HPE's position fails and

should be explicitly rejected, and the Court should give the well-known, readily understandable

term "in order to reduce interference" its plain and ordinary meaning.

### F.    U.S. Reissue Patent No. 42,153

*1.    "sending the poll response communications to the client systems" (claim 1)*

| HPE's Proposed Construction | IV's Proposed Construction |
|---|---|
| Plain and ordinary meaning, *i.e.*, sending the poll response communications to each of the client systems | Plain and ordinary meaning. |

HPE's attempt to insert the word "each" into the claim is based entirely on the premise

that the claim does not "recite sending the communications to a 'subset' of the client systems."

*See* Opening Brf., Dkt. 31 at 23.  But this premise is false; the claims explicitly recite:

> providing a plurality of network-connected distributed client
> systems, *the client systems **having under-utilized capabilities** and*
> ***running a client agent program** to provide workload processing*
> *for at least one project of a distributed computing platform*

'153 Patent, claim 1 (emphasis added). The underlined portion of the claim language

quoted above explicitly recites that the claimed "client systems" include *only* client systems that

have "under-utilized capabilities" and are "running a client agent program." This subset of "client systems" is the antecedent basis of "the client systems" recited in later claim limitations.[6]

HPE ignores the claim language above and argues instead that "sending the poll response communications to the client systems" requires sending a response to *every* client system *in the entire computing platform*. HPE's proposal would effectively read out the claim language requiring that "the client systems hav[e] under-utilized capabilities and run[] a client agent program," which explicitly refers to a *subset* of the client systems in the distributed platform.

As IV explained in its Responsive Brief, HPE's proposal is also inconsistent with the claims as a whole, which involve determining "whether to change *how many client systems* are active" at a particular time. *See, e.g.*, '153 patent, claim 1 (emphasis added). This language contemplates scenarios in which some client systems are "active" and some are not, which further confirms that the claim includes methods in which communications are sent to and/or received from a *subset* of the client systems in the platform. HPE's position is also inconsistent with the specification, which explicitly describes preferred embodiments where "a ***subset*** of the distributed client systems" is selected, which may include "*any random number* of distributed" client systems. '153 patent at 12:7-16 (emphasis added).

HPE argues that its construction reflects the plain and ordinary meaning of the disputed term, but it is in fact an attempt to rewrite the claim in a way that directly contradicts the claim language and would exclude preferred embodiments described in the specification. The Court should instead construe the disputed term according to its actual plain and ordinary meaning.

---

[6] In its Reply Brief, HPE insinuates that IV interprets "the client systems" to mean "one or more client systems." Dkt. 40 at 13-15. This is a strawman; IV has never taken that position. Because "the client systems" is plural, a single client system would not satisfy this limitation.

## G.     U.S. Reissue Patent No. 44,818

### 1.     *"hierarchical token bucket resource allocation"* (claims 1, 2, 17, 18, 30, 32, 34)

| HPE's Proposed Construction | IV's Proposed Construction |
|---|---|
| Allocation of resources using a class structure arranged in two or more levels, where each class has a bucket of tokens associated with it and scheduling a transmission results in deducting an amount of tokens from a corresponding bucket | Plain and ordinary meaning. |

The Court should, consistent with its own ruling in *Intellectual Ventures I LLC v. VMware Inc.*, No. 1:19-cv-01075-ADA (Claim Construction Order, Dkt. 103), reject HPE's repackaged version of the same failed argument made by VMware (see table below) and order that the "hierarchical token bucket resource allocation" term be given its plain and ordinary meaning.

| Presented by VMware | Presented by HPE |
|---|---|
| "plain and ordinary meaning, which is a tiered arrangement of token buckets where scheduling a message or packet for transmission results in deducting an amount of tokens from a corresponding bucket"<br><br>Support: 10:14-29 | "allocation of resources using a class structure arranged in two or more levels, where each class has a bucket of tokens associated with it and scheduling a transmission results in deducting an amount of tokens from a corresponding bucket"<br><br>Support: 10:2-11, 10:15-29 |

*See* Ex. E (December 3, 2020, email confirming modified construction proposal).

HPE's position is wrong for at least three reasons. First, the fact that two *defendants* accused of infringing the same claim would both seek a narrowing construction of a term in that claim is neither surprising nor remarkable. And it certainly does not necessitate re-construing the term here, where HPE has not offered any rationale different than already presented to the Court in the prior litigation.

Second, in its Petition Requesting *Inter Partes Review* of the '818 patent (IPR2022-00096), HPE acknowledges that the plain meaning of this term is sufficient and cites IV's Responsive Brief without disputing any arguments therein with respect to this term. *See* Ex. B (IPR2022-00096 Petition at 16). Thus, at least based on its position in the related IPR proceeding, HPE concedes that this term should be given its plain and ordinary meaning.

Third, HPE's proposed construction is wrong on the merits, as it imports limitations from the specification and injects confusion into the claims. As noted in IV's Responsive Brief, for example, applying HPE's construction to claim 32 would alter the scope of the claim by importing limitations from the specification requiring some type of scheduling and resulting deduction to occur—limitations which do not appear in the claim itself. *See* Dkt. 37 at 30-35. Absent a clear definitional statement or disclaimer of scope, neither of which HPE has established here, the law is clear that the term should be given its plain and ordinary meaning. *See, e.g.*, *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2015). This Court has rightly already accomplished that in the VMware litigation involving this same patent, and all IV asks is that the Court apply that correct decision again here.

## H. Conclusion

For the reasons stated above, IV respectfully asks the Court to explicitly reject HPE's flawed constructions and adopt IV's proposals instead.

November 24, 2021                                 Respectfully submitted,

_/s/ Derek Gilliland_
Matthew Vella
mvella@princelobel.com
Robert R. Gilman
rgilman@princelobel.com
Jonathan DeBlois
jdeblois@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000
Fax: (617) 456-8100

Derek Gilliland
State Bar No. 24007239
derek@soreylaw.com
SOREY & GILLILAND LLP
133 E. Tyler Street
Longview, Texas 75601
903.230.5600 (Telephone)
903.230.5656 (Facsimile)

**COUNSEL for PLAINTIFFS**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify a true and correct copy of the above and foregoing document was delivered to all counsel of record via the Court's CM/ECF service on the 24th day of November, 2021.

_/s/ Derek Gilliland_